**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KENNETH J. BAUWENS, et al.,**<br>**as the Electrical Pension Trustees**<br>**on behalf of Pension Plan No. 4,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**DUNNING ELECTRICAL SERVICES,**<br>**INC.,**<br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)       **Case No. 16 C 4548** |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In March 2012, a pension fund affiliated with IBEW Local 134 ("Pension Plan No. 4") assessed withdrawal liability against Dunning Electrical Services, Inc. after determining that Dunning had permanently ceased performing worked covered by the applicable collective bargaining agreement.  Pension Plan No. 4 set a payment schedule requiring 80 quarterly payments of $17,443 each.  There were also disputes involving Dunning's contributions to other union-affiliated funds.  Both arbitration and litigation commenced.

In August 2013, the parties reached a global settlement.  Their settlement agreement included a stipulation by Dunning that it had completely withdrawn from certain funds as of certain dates; dismissal of the arbitration and litigation; continuation of Dunning's existing quarterly payments; establishment of additional payment schedules relating to other funds; and a guaranty by Eileen and Jerome Sufranski, the owners of Dunning, of the originally established quarterly payments.

The settlement agreement included a release of claims relating to the particular funds, aside from enforcement of the settlement agreement.  But it also included a paragraph in which the parties agreed that there was no limitation on the rights of Pension Plan No. 4 and another union-affiliated pension plan "to declare a default and accelerate payments of either the Pension Plan No. 4 Claim or the Pension Plan No. 2

Claim" with certain limitations. Finally, the agreement said that if either of the pension plans extended the time for any payment, it would not modify or release the liability of Dunning or the Sufranskis.

The trustees of Pension Plan No. 4 filed the present suit against Dunning in April 2016. In their complaint, they alleged that Dunning had completely withdrawn from the plan as of February 2011; the trustees had assessed withdrawal liability in March 2012; and they had accelerated the amount due in 2015. Compl. ¶¶ 9-11. They alleged that the outstanding balance of Dunning's withdrawal liability was a little over $1.1 million. *Id.*¶ 13.

Dunning filed a motion to dismiss, which the Court converted to a motion for summary judgment because it relied on an affidavit, which was outside the complaint and was not a matter of which the Court appropriately could take judicial notice. Dunning makes three arguments: First, Dunning argues that the trustees can sue only if Dunning defaults on the settlement agreement, which it says it has not done. Second, Dunning argues that the trustees have waived their right to declare a default under the settlement agreement by accepting late payments. Third, Dunning argues that even if the settlement agreement does not control, the trustees failed to send a proper written notice of default or to provide an opportunity to cure the default, as required by ERISA.

The trustees argue (among other things) that they did, in fact, send Dunning a written notice of default, on July 9, 2015. *See* Pls.' Resp. to Def.'s Mot. for Summ. J., Ex. A. In that letter, the trustees stated that the payments due in November 2014, February 2015, and May 2015 had not been made or had not been made in full. The trustees also assessed interest on the delinquent payments. The trustees' letter also provided Dunning an opportunity to cure: it stated that if Dunning failed to cure the default within 60 days, "the entire amount of Dunning's withdrawal liability will be due and owing." *Id.*

In reply, Dunning argues that after sending this letter, the trustees accepted further installment payments, and they did not actually accelerate Dunning's withdrawal liability until they filed the present lawsuit. In the interim, in October 2015, the trustees filed a motion in the case in which the settlement agreement had been made seeking to enforce that agreement. In the motion, the trustees did not demand the full amount of

2

Dunning's withdrawal liability; rather, they sought only the past due payments under the settlement agreement, a little over $53,000 with respect to Pension Plan No. 4. Dunning argues that by doing this, the trustees accelerated only a portion of the withdrawal liability (it also contends that it paid the $53,000). A Department of Labor regulation says that if a plan sponsor accelerates only a portion of the outstanding amount of an employer's withdrawal liability, the sponsor must establish a new schedule of payments for the rest. *See* 29 C.F.R. § 4219.31.

The Court takes judicial notice of the record of the earlier case in which the trustees filed the motion to enforce the settlement agreement, *Divane v. Dunning Elec. Servs., Inc.*, Case No. 11 C 4915. When the motion to enforce came before Magistrate Judge Michael Mason for decision, the judge concluded that the trustees had, ultimately, requested acceleration of the entirety of Dunning's withdrawal liability— though this had become clear only at the hearing on the motion to enforce. *See* Case No. 11 C 4915, Order of Apr. 7, 2016 at 2. The judge went on to state, however, that the settlement agreement did not include an acceleration clause and that the parties had simply agreed to a payment plan, with the trustees retaining their rights to sue under ERISA for nonpayment of Dunning's withdrawal liability. *See id.* It appears that Judge Mason essentially concluded that a motion to enforce the settlement agreement was not the right way for the trustees to proceed; he denied the motion to enforce "without prejudice[,] with leave to pursue [the trustees'] claims as they see appropriate." *Id.* at 3. The trustees filed the present suit about two weeks later.

As indicated earlier, the settlement agreement *does* contain an acceleration clause, but (as Judge Mason's order suggests) all it does is preserve the trustees' rights under ERISA to declare a default and accelerate the payments due for Pension Plan No. 4 and Pension Plan No. 2. Judge Mason essentially said that if the trustees wanted to go after Dunning for the full amount due, they would have to comply with ERISA's requirements.

The Fund says it had already done that, by sending the acceleration notice in July 2015. The Court agrees with Dunning, however, that the Fund cannot appropriately rely on its July 2015 acceleration notice after, in effect, modifying it by serving a written demand seeking only a part of the full amount of withdrawal liability,

3

namely the motion to enforce the settlement agreement. The cited Department of Labor regulation precludes this: it requires setting a new payment schedule where only part of an employer's withdrawal liability is accelerated. This effectively means that a pension fund cannot immediately get the full amount of an employer's withdrawal liability after deciding to accelerate only part of it. Based on what the Court has read from the record of the earlier litigation under Case No. 11 C 4915, there is a decent chance that what happened is that that the trustees essentially botched this by asking for only $53,000 (rather than the full amount alleged to be due) in their motion to enforce the settlement. The burden of that error, however, appropriately falls on the trustees, not on Dunning.

The Court therefore dismisses the present case. The dismissal does not, however, extinguish any underlying liability that Dunning owes to any of the funds in question. For this reason, the Court dismisses with prejudice only the trustees' claim that they are entitled to a judgment at this time for the full amount of the accelerated withdrawal liability—which is the only claim they have made in this lawsuit. The trustees still have available, going forward, whatever remedies the law provides to collect the remainder of Dunning's withdrawal liability.

### Conclusion

For the reasons stated above, the Court grants defendant's motion to dismiss [# 10], which the Court previously converted to a motion for summary judgment. The Court directs the Clerk to enter judgment dismissing plaintiffs' claim for the full amount of defendant's alleged withdrawal liability. As indicated above, the trustees still have available whatever remedies the law provides to collect the remainder of defendant's withdrawal liability. The ruling and status hearing set for August 31, 2016 is vacated.

Date: Aug. 30, 2016

_____
MATTHEW F. KENNELLY
United States District Judge